IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHEA BACON, by and through MOLLIE MORONEY, as Conservator of the Person and Estate of DOROTHEA BACON, Conservatee, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN INTERNATIONAL GROUP, et al.,<br><br>    Defendants<br>                                                                    / | No. C-05-4979 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WASHINGTON MUTUAL'S MOTION TO DISMISS; VACATING HEARING**<br><br>(Docket No. 15) |

Before the Court is the motion to dismiss filed December 20, 2005 by defendants Washington Mutual, Inc. ("Washington Mutual Bank"), Washington Mutual Insurance Services, Inc. and WM Financial Services, Inc. (collectively, "Washington Mutual" or "Sales Agent Defendants"). Plaintiff Dorothea Bacon ("Bacon") has filed opposition to the motion, to which Washington Mutual has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the February 10, 2006 hearing. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The instant action is a purported class action brought on behalf of all "persons 65 and older who have purchased a deferred annuity solicited, referred, marketed, sold and/or

issued by any Defendant, and/or who have suffered or could suffer a penalty and/or surrender charge, including those incurred on death for accessing their money before its maturity date[.]" (See First Amended Complaint ("FAC") ¶ 49.) Bacon contends that defendants' sale of annuities to senior citizens violated California statutory and common law.

Bacon is 91 years old; Mollie M. Moroney was appointed Bacon's conservator on February 9, 2004. (See FAC ¶¶ 8-9.) Washington Mutual sold, to Bacon and other senior citizens, deferred annuities issued by defendants American International Group ("AIG"), AIG Retirement Services, Inc. ("AIG Retirement"), AIG Annuity Insurance Company ("AIG Annuity"), and SunAmerican Life Insurance Company ("SunAmerican") (collectively, "Insurer Defendants"). (See id. ¶ 1.) Bacon alleges that "Washington Mutual's sales agents, purporting to provide free financial advice, exploited Mrs. Bacon's trust and manipulated her and other seniors into buying deferred annuities that carry high surrender charges and tie up their money making it inaccessible for years – often beyond their life expectancy." (See id.) Bacon further contends that "[d]espite the obvious unsuitability of deferred annuities for seniors, Defendants target the elderly because such annuities are extremely lucrative for the Bank, the sales agents, and the insurance company." (See id.)

An annuity is a contract between an insurance company and an annuity policyholder under which the policyholder makes payments to the insurance company in exchange for the insurance company's agreement to make payments to the policyholder over a period of time. (See id. ¶ 23.) "With a deferred annuity, the policyholder agrees not to withdraw the initial investment or the earnings until the deferred annuity matures which is usually for 10 to 15 years and in some cases even for a longer period of time." (See id. ¶ 25.) "If the policyholder needs to withdraw any of the initial investment or a substantial percentage of the earnings during this deferral period, the policyholder must pay hefty surrender charges." (See id.) Bacon contends that deferred annuities are "inherently inappropriate for senior citizens because the investment will not mature until after the prospective purchaser's actuarial life expectancy." (See id. ¶ 26.)

Bacon further alleges that the Sales Agent Defendants "engage in various deceptive sales techniques designed to mislead senior citizens regarding the purported benefits and advantages of annuities compared to other forms of investments," and that the "Insurer Defendants, by and through the Sales Agents Defendants, have misrepresented the benefits and concealed the disadvantages of purchasing a deferred annuity in later stages of life." (See id. ¶ 35.) According to Bacon, defendants' marketing materials mislead senior citizens by (1) not adequately disclosing the surrender charges that remain in effect for the first 10-15 years of the annuity; (2) not disclosing that the maturity date is beyond the actuarial life expectancy of the annuitant; and (3) disguising the fact that purchasers of indexed deferred annuities[1] can have 0% returns in a given year. (See id. ¶ 36.) Bacon alleges "[d]efendants' marketing materials falsely proclaim that indexed deferred annuities are a risk-free investment because the deferred annuity contract provides for a guaranteed minimum value," while failing to disclose "that the guaranteed minimum account value does not exceed the premiums paid for many years and that policyholder must not surrender the policy for a significant period of time before the guaranteed minimum account value will protect against the risk of losing money." (See id.)

Bacon further alleges that defendants' contracts are "intentionally drafted so that the average person, let alone an elderly person, cannot readily understand their terms." (See id. ¶ 38.) In particular, according to Bacon, defendants' indexed annuity contracts "obfuscate how index credits are calculated and fail to fully explain that the policy may have 0% interest in a given year." (See id.) In addition, Bacon contends, the Sales Agent Defendants "attempt to conceal . . . the annuity's harsh surrender penalties and limitations on withdrawals." (See id.)

Bacon alleges that defendants, by selling deferred annuities to senior citizens in the

---

[1] According to Bacon, there are "at least" two kinds of deferred annuities: fixed deferred annuities and indexed deferred annuities. (See id. ¶ 24.) Under a fixed deferred annuity, the insurer offers a guaranteed interest rate, for a set period of time, on the policyholder's premium payments. (See id.) Under an indexed deferred annuity, the rate of interest fluctuates depending upon the performance of a stock market index selected by the policyholder at the time the annuity is purchased. (See id.)

manner set forth above, engaged in (1) unfair competition in violation of § 17200 of the California Business & Professions Code; (2) false and misleading advertising in violation of § 17500 of the California Business & Professions Code; (3) violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (4) financial elder abuse in violation of § 15657.5 of the California Welfare & Institutions Code; (5) fraud; (6) breach of the implied covenant of good faith and fair dealing; (7) negligence; and (8) breach of fiduciary duty.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the

4

nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

### A. California Law Permits the Sale of Annuities to Senior Citizens

Washington Mutual's first argument in support of dismissal is that the sale of annuities to senior citizens is expressly permitted by California law and, consequently, that any claim based solely on the sale of annuities to senior citizens must be dismissed. As Washington Mutual notes, Article 6.3 of the California Insurance Code governs the sale of insurance, including annuities, to senior citizens. See Cal. Ins. Code § 785 et seq. Although Article 6.3 imposes limitations on the sale of annuities to senior citizens, it does not bar the sale of annuities to senior citizens. For example, § 789.8 provides that an agent who offers to sell any "annuity product" to a senior citizen must provide certain disclosures in writing. See Cal. Ins. Code § 789.8.[2]

As the California Insurance Code permits the sale of annuities to senior citizens, Bacon cannot state a claim based on the theory that the sale of deferred annuities to senior citizens is unlawful. Bacon states in her opposition, however, that she "does not assert that *all* deferred annuity sales to senior citizens are unlawful or inappropriate," but, rather, "that defendants mislead and defraud senior citizens into purchasing deferred annuity policies through deceptive and misleading marketing and sales tactics." (See Opp. at 6 (emphasis

---

[2] Other statutes restricting such sales are Cal. Ins. Code § 789.9, which bars the sale of annuities to seniors, under certain circumstances, where the senior citizen's "purpose in purchasing the annuity is to affect Medi-Cal eligibility," and Cal. Ins. Code § 787, which bars an insurer from selling annuities to senior citizens "through the use of a true or fictitious name which is deceptive or misleading with regard to the status, character, or proprietary or representative capacity of the entity or person, or to the true purpose of the advertisement." See Cal. Ins. Code §§ 789.9, 787(a).

1 in original).)  In particular, Bacon clarifies that her complaint is not based on the argument
2 that the sale of annuities to seniors is illegal per se, but, rather, is based on "defendants'
3 false and misleading statements, negligence and breach of fiduciary duty in connection with
4 the sales of deferred annuities."  (See id. at 6-7.)

5 Accordingly, Washington Mutual's motion to dismiss all of Bacon's claims that are
6 based solely on the sale of annuities to senior citizens will be DENIED as moot.

### B. Particularity of Fraud Allegations

Washington Mutual's next argument is that Bacon's fraud claim is not alleged with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  See Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud.  See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-49 and n.7 (9th Cir. 1994) (en banc); Lancaster Community Hospital v. Antelope Valley Hospital District, 940 F.2d 397, 405 (9th Cir. 1991); see also Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (holding Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In support of her fraud claim, Bacon alleges defendants "misrepresented or concealed" the following facts:

a. the disadvantages of buying a deferred annuity, including tax consequences and penalties, and lack of access to their annuity investments;

b. the significant commissions Defendants and their sales agents earn from the sale of deferred annuities to senior citizens, including Plaintiff and the Class; and

c. the surrender charges, penalties and/or penalties that occurred on death by obscuring and hiding references thereto.

(See FAC ¶ 107.)  Bacon further alleges that, on July 17, 2001, she purchased, through a sales agent at Washington Mutual Bank, a "WM Income Builder deferred annuity" that was

6

1  issued by AIG Annuity Insurance Company.  (See id. ¶ 40.)  Bacon fails, however, to allege
2  what she was told about the annuity she purchased at the time she purchased it, who made
3  the assertedly misleading statements, and why such statements were false or misleading at
4  the time they were made.  In addition, Bacon fails to allege each defendants' role in the
5  alleged fraud.
6        Accordingly, the Court will GRANT Washington Mutual's motion to dismiss Bacon's
7  fraud claim with leave to amend.
8        **C.  "Grounded in Fraud"**
9        Washington Mutual next argues that all of Bacon's other claims are subject to
10  dismissal because they are "grounded in fraud," and are not pleaded with the particularity
11  required by Rule 9(b).
12        The Ninth Circuit has held that where a plaintiff "allege[s] a unified course of
13  fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . .
14  the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that
15  claim as a whole must satisfy the particularity requirement of Rule 9(b)," even with respect
16  to claims as to which fraud is not an element, See Vess v. Ciba-Geigy Corp. USA, 317
17  F.3d 1097, 1105 (9th Cir. 2003) (citing See In re Stac Electronics, 89 F.3d 1399, 1404-05
18  (9th Cir. 1996)).  For example, in In re Daou Systems, Inc. Sec. Litigation, 411 F.3d 1006
19  (9th Cir. 2005), the Ninth Circuit found the pleading requirements of Rule 9(b) applicable to
20  a cause of action alleging a violation of Section 11 of the Securities Act of 1933, a claim
21  that does not include fraud as an element, because the complaint alleged a fraudulent
22  scheme by all defendants, incorporated all allegations previously averred in the complaint
23  for purposes of all of the claims, and the plaintiffs "never rel[ied] on such conduct as
24  negligence or mistake in stating their claims."  See id. at 1028.
25        On the other hand, the Ninth Circuit has held that where plaintiffs choose not to
26  allege "a unified course of fraudulent conduct," but rather to allege "some fraudulent and
27  some non-fraudulent conduct[,] . . . only the allegations of fraud are subject to Rule 9(b)'s
28  heightened pleading requirements."  See Vess, 317 F.3d at 1104.  "To require that non-

7

fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." See id. at 1104. "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." See id. Where both fraudulent and non-fraudulent conduct is alleged, "an inadequate averment of fraud does not mean that no claim has been stated." See id. at 1105 (internal quotation and citation omitted). Rather, "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." See id. (internal quotation and citation omitted).

Washington Mutual contends that the First through Fourth causes of action are, in each instance, based on allegedly fraudulent conduct by defendants, and that the Sixth through Eighth causes of action expressly incorporate the allegations from the fraud count. Consequently, Washington Mutual argues, all of Bacon's claims are grounded in fraud and are subject to dismissal for failure to comply with the pleading requirements of Rule 9(b).

The Court agrees that much of the complaint is devoted to allegations that defendants engaged in a scheme to defraud senior citizens. (See, e.g., FAC ¶ 32 ("Defendants' common course of conduct and scheme include a number of players and components calculated to defraud or otherwise take advantage of the elderly"); ¶ 35 (alleging defendants have engaged in "deceptive sales technique designed to mislead senior citizens" and have "misrepresented the benefits and concealed the disadvantages of purchasing a deferred annuity in later stages of life"); ¶ 38 (alleging contracts are "intentionally drafted" so that senior citizens cannot readily understand them and that defendants "attempt to conceal the very provisions of the contract that render the deferred annuity inherently unsuitable for seniors").)

Bacon also relies on allegations of non-fraudulent conduct, however. For example, Bacon's § 17200 claim relies on allegations of unlawful and unfair conduct, as well as fraudulent conduct. (See FAC ¶¶ 65-68.) Although Bacon's claim for violation of § 17500 contains allegations that defendants "intentionally issued false and misleading

advertisements," (see id. ¶ 75), she also alleges that "[i]n making and disseminating these statements and advertisements, Defendants . . . should have known they were untrue and misleading," (see id. ¶ 77), a non-fraud-based claim. See Khan v. Medical Board of Supervisors, 12 Cal. App. 4th 1834, 1846 (1993) (holding § 17500 "can be violated through negligence"); People v. Forest E. Olson, Inc., 137 Cal. App. 3d 137, 140 (1982) ("[S]ection 17500 prohibits negligent as well as intentional dissemination of misleading advertising."). Bacon's claim for breach of the implied covenant of good faith and fair dealing relies both on allegations of fraud, (see FAC ¶ 118), and on non-fraud-based allegations such as defendants' purported failure "to fully and accurately perform [their] underwriting duties" and failure "to competently train and supervise [their] sales agents and/or employees," (see FAC ¶ 116). Additionally, although Bacon's negligence claim incorporates fraud allegations from earlier paragraphs of the complaint, Bacon also alleges that defendants "negligently and carelessly provided financial investment advice." (See id. ¶ 122.) Because the above-referenced claims are not based solely on a "unified course of fraudulent conduct, and thus are not "grounded in fraud," Bacon's failure to plead fraud with the particularity required by Rule 9(b) does not require dismissal of such claims in their entirety. See Vess, 317 F.3d at 1105.[3]

On the other hand, Bacon's claim that defendants engaged in financial elder abuse, see Welfare and Institutions Code § 15610.30, and her claim for breach of fiduciary duty, are based entirely on allegations of fraud. (See FAC ¶¶ 97-99, 132.)[4] As said claims are "grounded in fraud," at least as currently pleaded, Bacon's failure to plead fraud with the requisite particularity requires dismissal of her claims for financial elder abuse and breach of fiduciary duty.

---

[3] As noted, however, the insufficiently pleaded averments of fraud included in such claims are "disregarded." See id. Consequently, to the extent Bacon seeks to rely on such averments, she must plead them with the particularity required by Rule 9(b).

[4] Although, with respect to the financial abuse claim, Bacon alleges defendants took money from her for their own "wrongful use and/or with intent to defraud," there is no factual allegation as to "wrongful use" separate from the allegations of fraud.

9

Accordingly, the Court will GRANT Washington Mutual's motion to dismiss Bacon's financial elder abuse and breach of fiduciary duty claims, for failure to comply with the pleading requirements of Rule 9(b), and said claims will be dismissed with leave to amend. Washington Mutual's motion to dismiss Bacon's claims alleging violations of §§ 17200 and 17500, breach of the implied covenant of good faith and fair dealing, and negligence, for failure to comply with the pleading requirements of Rule 9(b), will be DENIED to the extent such claims are based on allegations other than fraud and GRANTED with leave to amend to the extent such claims are based on fraud allegations.

**D.  Section 17200 Claim: Conclusory Allegations**

Washington Mutual moves to dismiss Bacon's § 17200 claim on the additional ground that her allegations are too conclusory to state a claim and, in some instances, could never state a claim. Section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200. Bacon alleges that defendants' sale of deferred annuities to senior citizens constitutes unfair competition under all three prongs of the statute. (See FAC ¶¶ 64-73.)

The Court has addressed above the insufficiency of Bacon's fraud allegations. With respect to "unlawful" conduct, Bacon alleges that Washington Mutual violated numerous statutes, including § 17500 of the California Business and Professions Code. (See id. ¶ 65.) Although Washington Mutual contends it could not have violated certain of the statutes on which the claim is based, it does not contend there are no such statutes under which Bacon can state a claim.[5] For example, Washington Mutual does not challenge Bacon's allegation that defendants violated § 17500. Indeed, Bacon has alleged a separate cause of action for violation of § 17500, which Washington Mutual has not separately moved to dismiss. Accordingly, Washington Mutual has not demonstrated that Bacon's § 17200 claim is subject to dismissal in its entirety.

The Court agrees, however, that, to the extent Bacon is relying on "unlawful"

---

[5] Washington Mutual does not separately address Bacon's allegation of "unfair" conduct.

conduct as the basis of her § 17200 claim, she may not simply set forth a catalogue of statutes that purportedly were violated by defendants. (See FAC ¶ 65.) Rather, Bacon must allege the factual basis for her claim that each of such statutes was violated. See, e.g., Holden v. Hagopian, 978 F.2d at 1121 (holding courts, in ruling on motions to dismiss, need not accept "conclusory legal assertions"). Because certain of the statutory violations alleged as the basis of Bacon's § 17200 claim also are set forth as separate causes of action, Bacon properly may incorporate the factual allegations from those claims in her § 17200 claims. To the extent Bacon's § 17200 claim is predicated on violations of statutes that do not form the basis of a separate cause of action in her complaint, however, the § 17200 claim is inadequately pleaded, and, to such extent, the motion to dismiss the § 17200 claim will be GRANTED.

### E. Statute of Limitations

Washington Mutual next argues that all of Bacon's claims are time-barred, with the exception of her claims for violation of §§ 17200 and 17500 of the California Business and Professions Code as asserted against the defendants named in the original complaint.

Bacon alleges she purchased an annuity on July 17, 2001 "through a sales agent at Washington Mutual bank." (See FAC ¶ 40.) The instant action was filed in state court on July 15, 2005, almost four years later, against defendants AIG, AIG SunAmerica, Inc., and Washington Mutual, Inc. (See Notice of Removal Ex. A.) The First Amended Complaint, which added defendants Washington Mutual Insurance Services, Inc., WM Financial Services, Inc., AIG Retirement, AIG Annuity, and SunAmerican, was filed November 2, 2005.

Washington Mutual asserts that all of Bacon's causes of action, other than her causes of action for violation of § 17200 and § 17500, are subject to statutes of limitations of three years or less, and, consequently, are time-barred because they were first asserted more than three years after Bacon's July 17, 2001 annuity purchase. Washington Mutual further argues that the claims for violation of §§ 17200 and 17500, as asserted against the defendants added in the First Amended Complaint, are time-barred because those claims

are subject to a four-year statute of limitations, and, as asserted against the newly-added defendants, do not relate back to the date the initial complaint was filed.

In its motion, however, Washington Mutual sets forth no argument as to when each of Bacon's causes of action accrued.[6]  As a consequence, Washington Mutual has not established that the statute of limitations on any of Bacon's claims has run.  As the statute of limitations is an affirmative defense, Washington Mutual has the burden of demonstrating that Bacon's claims are time-barred.  See Fed. R. Civ. P. 8(c) (providing statute of limitations is affirmative defense); see also California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1407 (9th Cir. 1995) ("[T]here is no requirement that a plaintiff specifically allege when the cause of action accrued – that is the defendant's responsibility if it wishes to raise a limitations defense.")

Accordingly, Washington Mutual's motion to dismiss, to the extent such motion is based on the statute of limitations, will be DENIED, without prejudice.[7]

**F.  CLRA Claim**

The CLRA bars certain specified "acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"  See Cal. Civ. Code § 1770(a).  Washington Mutual moves to dismiss Bacon's claim for violation of the CLRA on the ground that annuities are neither goods nor services.

The California Supreme Court has stated, albeit in dicta, that "insurance is

---

[6] The Court does not consider the arguments with respect to accrual that are set forth for the first time in Washington Mutual's reply.  See, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n. 6 (9th Cir. 2004) (refusing to consider argument raised for the first time in reply because opposing party had no opportunity to respond).

[7] Because Washington Mutual has not demonstrated that any of the statutes of limitations have run, the Court does not reach Washington Mutual's arguments as to whether Bacon has adequately pleaded equitable tolling, or whether her claims for violation of §§ 17200 and 17500, as asserted against the defendants who were first named in the First Amended Complaint, relate back to the date the initial complaint was filed.

12

technically neither a 'good' nor a 'service' within the meaning of the [CLRA]."[8]  See Civil Service Employees Ins. Co. v. Superior Court, 22 Cal. 3d 362, 376 (1978).[9]  The California Insurance Code includes "annuities" in the definition of "life insurance."  See Cal. Ins. Code § 101 (defining "life insurance" to include "the granting, purchasing, or disposing of annuities"); see also Texas Commerce Bank v. Garamendi, 11 Cal. App. 4th 460, 469-71 (1992) (holding § 101 defines annuities as "insurance" despite fact that annuities otherwise fail to meet statutory definition of insurance set forth in Cal. Ins. Code § 22).  Thus, Washington Mutual contends, because the CLRA does not apply to sales of insurance, it likewise does not apply to the sale of annuities.

In response, Bacon relies on Kagan v. Gilbraltar Savings and Loan Ass'n, 35 Cal. 3d 582 (1984) and Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282 (2002).  Neither case, however, is authority for the proposition that annuities are goods or services under the CLRA.  In Kagan, the plaintiff therein alleged that a savings and loan association violated the CLRA by engaging in false advertising in the sale of Individual Retirement Accounts.  See Kagan, 35 Cal. 3d at 587.  Not only did Kagan not involve insurance, it did not opine as to the definition of "goods" and "services" under the CLRA, and thus had no reason to address the California Supreme Court's earlier statement in Civil Service Employees to the effect that insurance is not a "good" or "service" within the meaning of the CLRA.  See Civil Service Employees Ins. Co. v. Superior Court, 22 Cal. 3d

---

[8] The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods which, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not severable therefrom."  See Cal. Civ. Code § 1761(a).  The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  See Cal. Code § 1761(b).

[9] Civil Service Employees concerned an insurance class action based on breach of contract, and did not involve a claim brought under the CLRA.  The Supreme Court held that a provision of the CLRA authorizing the trial court to impose on either party the cost of notifying class members of the pendency of a class action was applicable, even though insurance is not a good or service under the CLRA, because "the class action procedures prescribed by the [CLRA] could and should appropriately be used by trial courts in all class actions."  See id. at 376.

1 at 376. Likewise, in Massachusetts Mutual, although the California Court of Appeal held
2 that a CLRA action against an insurer was properly certified as a class action, see
3 Massachusetts Mutual, 97 Cal. App. 4th at 1286, there is no indication that any party ever
4 raised a question as to whether insurance is a good or service under the CLRA, and the
5 Court of Appeal did not discuss the issue.

6 Accordingly, as Bacon has pointed to no subsequent authority that has taken issue
7 with the California Supreme Court's statement in Civil Service Employees that insurance is
8 neither a "good" nor a "service" within the meaning of the CLRA, see Civil Service
9 Employees Ins. Co. v. Superior Court, 22 Cal. 3d at 376, and the Court has located none,
10 Civil Service Employees represents the best indication of how the California Supreme
11 Court would rule on the issue were the issue to come squarely before it.

12 Accordingly, the Court finds annuities are neither goods nor services within the
13 meaning of the CLRA, and, consequently, Washington Mutual's motion to dismiss Bacon's
14 claim for violation of the CLRA will be GRANTED.

## CONCLUSION

16 For the reasons set forth above, Washington Mutual's motion to dismiss is hereby
17 GRANTED in part and DENIED in part, as follows:

18 1. The motion to dismiss Bacon's fraud claim for failure to comply with the pleading
19 requirements of Rule 9(b) is GRANTED, and said claim is dismissed with leave to amend.

20 2. The motion to dismiss Bacon's financial elder abuse and breach of fiduciary duty
21 claims, for failure to comply with the pleading requirements of Rule 9(b), is GRANTED, and
22 said claims are dismissed with leave to amend. The motion to dismiss Bacon's claims
23 alleging violations of §§ 17200 and 17500, breach of the implied covenant of good faith and
24 fair dealing, and negligence, for failure to comply with the pleading requirements of Rule
25 9(b), is DENIED to the extent such claims are based on allegations other than fraud and
26 GRANTED with leave to amend to the extent such claims are based on fraud allegations.

27 3. The motion to dismiss the § 17200 claim in its entirety for failure to state a claim
28 is DENIED. To the extent Bacon's § 17200 claim is predicated on violations of statutes that

do not form the basis of a separate cause of action in her complaint, the motion to dismiss the § 17200 claim is GRANTED, with leave to amend.

    4. The motion to dismiss the third through eighth causes of action as time-barred is DENIED without prejudice.

    5. The motion to dismiss the CLRA claim is GRANTED, and said claim is dismissed with prejudice.

    6. Bacon may file an amended complaint no later than twenty days from the date of this order.

This order terminates Docket No. 15.

**IT IS SO ORDERED.**

Dated: February 8, 2006

MAXINE M. CHESNEY  
United States District Judge